**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MARK WHITAKER,** *Plaintiff*, v. **CITY OF PHILADELPHIA, et. al.,** *Defendants*. | Case No. 5:20-cv-03413-JDW |

### MEMORANDUM

Mark Whitaker spent 17 years in prison, but a jury exonerated him after he won a retrial. Having lost 17 years of his life, Mr. Whitaker understandably wants to hold someone responsible, and he has focused on the two Philadelphia Police Detectives who investigated him: Steven Vivarina and John McDermott. But while Mr. Whitaker has made a number of allegations about the investigation that led to his conviction, he has not developed evidence to support those allegations. In fact, Mr. Whitaker admits every fact that the Defendants posit as a basis for their summary judgment motion. On the record before it, the Court concludes that Mr. Whitaker has not established a triable issue of fact to support his claim that Detectives Vivarina and McDermott violated his civil rights, so the Court must grant Defendants' summary judgment motion.

I.      **FACTUAL BACKGROUND**

   A.    **The Robbery of Happy Days Bar And Ensuing Investigation**

On January 26, 1999, Abdul Lee Stewart, Stephen Shakuur, and a third individual entered the Happy Days bar with the intention of robbing it at gunpoint. During the robbery, Mr. Stewart fatally shot a bartender named Mario Lim, and Mr. Shakuur fired a shot that permanently injured a patron named Thomas Zingani. The men then left the bar with $600 in cash from the register behind the bar.

Immediately following the robbery, police interviewed two witnesses. One, a bartender named Donna Mestichelli, told police there were three participants in the robbery and provided descriptions of each. The other, a patron named Thomas Ceneviva, told police two men fired weapons, but he was never asked if there was a third participant, nor did he mention seeing anyone at the bar other than Ms. Mestichelli, the victims, and two dancers. Three weeks later, on February 17, 1999, Philadelphia Police detectives interviewed Malikah Hardy, one of the dancers who was at the bar the night of the robbery. She said that she saw three men participate.

On August 19, 1999, the FBI arrested Mr. Stewart in connection with multiple robberies in the City of Philadelphia. Mr. Stewart confessed to being involved in several, but the incident at Happy Days Bar was not one of them. On March 15, 2000, as part of a cooperation agreement, Mr. Stewart indicated awareness of the Happy Days Bar incident, but he did not claim involvement. Over the next several months, however, detectives compiled evidence linking both Mr. Stewart and Mr. Shakuur to

that incident, including fingerprints and witness identifications. This evidence formed the basis of arrest warrants for both Mr. Stewart and Mr. Shakuur.

On June 20, 2000, Mr. Stewart and Mr. Shakuur were in police custody in connection with the robbery at Happy Days Bar. In post-arrest statements to detectives that day, both men identified a third participant as "Mark" from the 1200 block of N. 29th Street, and both identified Mr. Whitaker in photo lineups. Philadelphia Police Department homicide detectives then conducted a records check that revealed Mr. Whitaker's mother lived at 1238 N. 29th Street, that he used 1238 N. 29th Street as an address, and that he was registered to vote at 1257 N. 29th Street.

**B.     Arrest And Conviction Of Mr. Whitaker**

On April 2, 2002, Mr. Stewart agreed to provide testimony in cases against Messrs. Shakuur and Whitaker. That same day, Detective Vivarina prepared an Affidavit of Probable Cause for an Arrest Warrant for Mark Whitaker. The affidavit included Mr. Stewart's confession and identification of Mr. Whitaker, as well as Mr. Whitaker's address information. A judge approved the arrest warrant within a day. Two days later, Detective McDermott re-interviewed Mr. Ceneviva. In that interview, Mr. Ceneviva identified Mr. Whitaker as the third participant in the robbery. On April 10, 2002, Philadelphia Police officers arrested Mr. Whitaker pursuant to an arrest warrant that Detective Vivarina prepared.

Mr. Whitaker preliminary hearing took place on April 17, 2002. At this preliminary hearing, Mr. Ceneviva again testified as to Mr. Whitaker's involvement in the murder and robbery at Happy Days Bar. Mr. Stewart also took the stand, but he

refused to offer testimony against Mr. Whitaker. No other witnesses provided testimony against Mr. Whitaker at the preliminary hearing. The Court of Common Pleas held the case over for trial.

At trial, Mr. Ceneviva and Ms. Mestichelli identified Mr. Whitaker as one of the participants in the robbery. Mr. Whitaker did not present an alibi, nor did he, Mr. Shakuur, or Mr. Stewart testify. On October 29, 2003, the jury found Mr. Whitaker guilty of second-degree murder, robbery, criminal conspiracy, possessing instruments of a crime, and aggravated assault, and the court imposed a mandatory sentence of life imprisonment.

### C.     Mr. Whitaker's Post-Sentence Motions And Eventual Exoneration

For more than a decade after his conviction, Mr. Whitaker pursued post-conviction relief in Pennsylvania state courts. In April 2014, he filed a Petition seeking a writ of habeas corpus. The district court denied the petition, but the Third Circuit reversed in part. *See Whitaker v. Superintendent Coal Township SCI*, 721 F. Appx. 196 (3d Cir. 2018). On remand, the district court conditionally granted the Petition and ordered the Commonwealth either to release Mr. Whitaker from custody or to retry him within 120 days.

The Commonwealth retried Mr. Whitaker. According to Mr. Whitaker, Mr. Stewart testified during the second trial that police provided him with the name "Mark" when they first interrogated him, presumably to get him to implicate Mr. Whitaker. But Mr. Whitaker does not have a transcript or notes of Mr. Stewart's testimony. At the end of the trial, the jury acquitted Mr. Whitaker.

4

### D. Procedural History

On July 7, 2020, Mr. Whitaker sued the City of Philadelphia and Detectives McDermott and Vivarina. He filed an Amended Complaint on October 9, 2020, asserting claims against Detectives McDermott and Vivarina under 42 U.S.C. § 1983 for malicious prosecution (Count I), deprivation of liberty without due process and denial of a fair trial (Count II), conspiracy to violate civil rights (Count III), and failure to intervene (Count IV). He also asserts a claim against the detectives for malicious prosecution under Pennsylvania law (Count VI) and a claim of municipal liability against the City of Philadelphia (Count V). Defendants moved to dismiss the Amended Complaint, and the Court granted that motion in part. The Court dismissed some parts of Count II with prejudice and other parts without prejudice. Mr. Whitaker has not sought to amend the complaint since that ruling.

On July 30, 2021, Defendants filed a motion for summary judgment on each of those claims. They supported the Motion with a 94-paragraph statement of undisputed material facts. Mr. Whitaker admits that every one of those facts is correct. (ECF No. 33-2.)

## II. Legal Standard

Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to enter, summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails

to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quotations omitted).

In ruling on a summary judgment motion, a court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation omitted). However, "[t]he non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citation omitted).

### III. Analysis

#### A. Scope Of Admissible Evidence

Mr. Whitaker bases much of his argument on Mr. Stewart's testimony at Mr. Whitaker's second trial. That testimony is hearsay. It is a statement that Mr. Stewart made in a setting other than this trial or hearing and that Mr. Whitaker offers for its truth. *See* Fed. R. Evid. 801(c). No exception applies to avoid the rule against hearsay, and Mr. Whitaker has not invoked any particular exception. In any event, none of the exceptions for available witnesses applies. *See* Fed. R. Evid. 803. And Mr. Whitaker has not shown that he cannot obtain Mr. Stewart's attendance at trial. *See* Fed. R. Evid. 804(a)(5). Therefore, because Mr. Whitaker's testimony about Mr. Stewart's testimony is hearsay outside of any exception, the Court will not consider Mr. Stewart's testimony at the second trial.

### B. Merits Of Claims

#### 1. Malicious prosecution

To prove a claim of malicious prosecution under either the Fourth Amendment or Pennsylvania law, a plaintiff must prove (1) the defendant initiated a criminal proceeding, (2) the criminal proceeding terminated in favor of the plaintiff, (3) the defendant initiated the proceeding without probable cause, and (4) the defendant acted with malice or for a purpose other than bringing the plaintiff to justice. See *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003); *Corrigan v. Central Tax Bureau of Pa.*, Inc., 828 A.2d 502, 505 (Pa. Cmwlth. Ct. 2003). Probable cause exists when "the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000) (quote omitted). A police officer may only be liable for damages for an arrest if no reasonable, competent officer would conclude that probable cause existed at the time of the arrest. *See Malley v. Briggs,* 475 U.S. 335, 341 (1986).

When Detectives McDermott and Vivarina arrested Mr. Whitaker, they knew several facts that gave them probable cause to arrest Mr. Whitaker, none of which Mr. Whitaker disputes:

- Mr. Stewart said that he had committed the robbery with two other men, one of whom was named "Mark" who lived on 29th Street between Stiles and Thompson Streets;

- Mr. Stewart had identified Mr. Whitaker from a photo lineup;

7

- In a separate interview with police, Mr. Shakuur told police that he, Mr. Stewart, and a third man named "Mark" had committed the robbery, and that he knew Mark from the area of 29th Street and Girard Avenue;

- Mr. Whitaker used two addresses on the 1200 block of N. 29th Street, both of which were between Stiles and Thompson Streets, near Girard Avenue; and

- Mr. Ceneviva identified a photograph of Mr. Whitaker as the third person involved in the robbery (this happened after the Detectives obtained an arrest warrant for Mr. Whitaker but before they arrested him).

Taken together, these facts provide enough for a reasonable person to conclude that Mr. Whitaker was involved in the robbery.

Even though he admits all of these facts, Mr. Whitaker argues that the Court should not credit them, but none of his arguments gives the Court a basis to discount them or to find a factual dispute. *First*, Mr. Whitaker points to his testimony about the substance of Mr. Stewart's testimony at the second trial. But, as the Court has already explained, Mr. Whitaker has no admissible evidence to establish what Mr. Stewart said on the stand. *Second*, Mr. Whitaker complains that the application for the arrest warrant did not mention earlier, inconsistent statements of witnesses. While it is true that the initial statements that the Detectives obtained from Mr. Ceneviva did not mention Mr. Whitaker, or a third person more generally, that does not make them inconsistent. From the start, Ms. Mestichelli referenced three people involved in the robbery. So did Ms. Hardy. And, there is nothing in the record to suggest that either of them was wrong

or coerced. *Third*, Mr. Whitaker references an "unconstitutionally suggestive photo array." (ECF No. 33-1 at 11-12.) Nothing in the record even hints at that. The Court cannot credit an unsupported line of attorney argument as a basis to deny summary judgment. *Fourth*, Mr. Whitaker references "fabricated and coerced statements" from witnesses. (*Id.* at 11.) But there is no evidence that Detectives McDermott and Vivarina coerced any witness's statement, or even that they knew that someone else had done so. In his Amended Complaint, Mr. Whitaker alleges that the Detectives fed information to Mr. Ceneviva for Mr. Ceneviva to relate back to them, but there is no evidence of that in the record. Nor is there evidence that either Detective coerced Mr. Stewart or Mr. Shakuur to identify Mr. Whitaker as their co-conspirator.

### 2.     Due process

The Parties debate whether a plaintiff can pursue a procedural due process claim under the 14th Amendment in light of the Supreme Court's decision in *Albright v. Oliver*, 510 U.S. 266, 273 (1994). The Court doesn't have to resolve that question, though. Even assuming *Albright* leaves room for such a claim, Mr. Whitaker lacks the evidence to support one.

A plaintiff pursuing a procedural due process claim must prove two elements: (a) "that he has a liberty or property interest which has been interfered with by the State;" and (2) the procedures that the State employed to deprive him of liberty or property were constitutionally insufficient. *Ky. Dept. of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). Mr. Whitaker spent 17 years in prison, so someone interfered with his liberty interest. But for the same reason that his malicious prosecution claim fails, he

cannot demonstrate that Detective McDermott or Detective Vivarina used constitutionally insufficient procedures to cause that deprivation. Because the Court will not consider Mr. Whitaker's hearsay statements about the substance of Mr. Stewart's testimony at the second trial, the record before the Court does not reveal any improper conduct by Detectives McDermott and Vivarina. And, given the uncertainty of the law in this area, it seems likely that qualified immunity would protect Detectives McDermott and Vivarina even if there were a cognizable claim.

### 3. Fabrication of evidence

A fabrication of evidence claim requires a plaintiff to prove that (a) officers offered testimony or evidence that they knew was false but offered the evidence in bad faith, and (b) that the fabricated evidence was "so significant that it could have affected the outcome of the criminal case." *Halsey v. Pfeiffer*, 750 F.3d 273, 295 (3d Cir. 2014); see also *Black v. Montgomery County*, 835 F.3d 358, 368-72 (3d Cir. 2016). Mr. Whitaker has not offered any evidence of either element, as the Court has already detailed. In his Opposition, Mr. Whitaker points to 13 paragraphs in his Amended Complaint as a basis to establish these elements and argues that it is "clear, **at the pleading stage** that plaintiff has set forth a legitimate claim for fabrication of evidence on behalf of the named defendants." (ECF No. 33-1 at 15 (emphasis added).) But this is not the pleading stage of the case; it is summary judgment. And it is black-letter law that a party resisting a summary judgment motion "may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists

10

a genuine dispute over a material fact." *Doe*, 480 F.3d at 256. Mr. Whitaker has not done that.

### 4. Conceded Claims

Mr. Whitaker says that he "has no objection" to the Court granting summary judgment on the conspiracy and failure-to-intervene claims. The Court will do so.

### 5. Municipal liability

To maintain a claim for municipal liability, a plaintiff must first establish a constitutional violation by a municipal actor. *See City of Los Angeles v. Heller*, 475 U.S. 796, 798-99 (1986); *Mulholland v. Got't Cnty . of Berks*, 706 F.3d 227, 238 n.15 (3d Cir. 2013). The Court has concluded that Mr. Whitaker cannot prove that any employee of the City of Philadelphia violated his constitutional rights, so his municipal liability claim also fails.

## IV. CONCLUSION

Mr. Whitaker might have suspicions about the process that led the Detectives to arrest him, but he has not backed those suspicions with admissible evidence. Without such evidence, the Court cannot consider his suspicions or allegations. Instead, the Court must grant Defendants' summary judgment motion. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

December 6, 2021